1 **WO**

2

3

4

5

6                    IN THE UNITED STATES DISTRICT COURT

7                        FOR THE DISTRICT OF ARIZONA

8

9

10  Owner-Operator Independent Drivers          )
    Association, Inc., et al.,                  )
11                                              )
                           Plaintiffs,          )      No. CV-02-1059-PHX-PGR
12                                              )
                  vs.                           )
13                                              )      OPINION and ORDER
    Swift Transportation Co., Inc. (AZ), et al.,)
14                                              )
                           Defendants.          )
15  _____)

16          This action involves alleged violations of the federal Truth-in-Leasing

17  regulations, 49 C.F.R. Part 376, which impose requirements and restrictions on

18  lease agreements between federally regulated motor carriers and owner-

19  operators.  The plaintiffs' First Amended Class Action Complaint for Declaratory

20  and Injunctive Relief [and] Damages (doc. #174), filed on September 26, 2003,

21  seeks declaratory and injunctive relief, as well as damages, pursuant to the

22  private right of action afforded by the Interstate Commerce Commission

23  Termination Act of 1995, 49 U.S.C. § 14704(a).  The plaintiffs named in the

24  amended complaint are the Owner-Operator Independent Drivers Association,

25  Inc. ("OOIDA"), and twelve individual owner-operators: Marc Mayfield, Frank

26  Belcher, David Hayes, Gerald Webb, David Rush, Valerie Helton, John Nunn, Sr.,

Wayne Bibicoff, Roy Sparks, Olin Sparks, Paul Hawkins, and Frank Carter.[1]  The named defendants are Swift Transportation Co., Inc. (AZ) ("Swift"), Swift Transportation Co., Inc. (NV), Interstate Equipment Leasing Co., Inc., M.S. Carriers, Inc., and M.S. Carriers Warehouse & Distribution, Inc.[2]

Among the motions pending before the Court are the Motion for Partial Summary Judgment of Defendant Swift Transportation Co., Inc. (AZ) on Counts I & II of the First Amended Complaint and Plaintiffs' Motion for Partial Summary Judgment on Liability, simultaneously filed on December 29, 2006.  Having considered the parties' memoranda in light of the evidence of record, the Court finds that the cross-motions should be granted in part and denied in part pursuant to Fed.R.Civ.P. 56.[3]

---

[1]

The Court denied the plaintiffs' motion for class certification on March 30, 2006.

[2]

The Court stayed the plaintiffs' claims against M.S. Carriers, Inc. and referred those claims to arbitration pursuant to the Federal Arbitration Act on September 26, 2003, dismissed the plaintiffs' claims against M.S. Carriers Warehouse and Distribution, Inc. and dismissed its counterclaims on July 28, 2004, and dismissed, pursuant to stipulation, the plaintiffs' claims against Interstate Equipment Leasing Co., Inc. on February 12, 2007.

[3]

The Court notes that it construes the plaintiffs' summary judgment motion as also being brought in the name of Gerald Webb.  Although the named moving plaintiffs are limited to Belcher, Hayes, Helton, and Mayfield, the record establishes that Webb was also a Swift owner-operator for some three months in 2002.  While the plaintiffs' counsel moved to withdraw as counsel for Webb on February 23, 2007, on the ground that they had lost contact with him, those counsel were still counsel of record for Webb pursuant to LRCiv 83.3(a) at the time the plaintiffs' summary judgment motion was filed on December 29, 2006 and the plaintiffs' motion should have included Webb.

The Court also notes that it does not construe Swift's motion as being directed at plaintiff Wayne Bibicoff, who is currently representing himself in this

1  A. Standard for Regulatory Compliance for Liability Purposes

2         The parties initially, and extensively, raise the issue as to what level of

3  regulatory compliance is required to avoid liability under the Truth-in-Leasing

4  regulations, with the plaintiffs arguing that the owner-operators' leases must

5  literally comply with the provisions of the regulations, and the defendants arguing

6  that they must only substantially comply with the regulations.  While there are a

7  few unpublished district court decisions supporting both sides' positions, the

8  Court concludes that it need not resolve the issue for purposes of the pending

9  motions as the evidence of record establishes that Swift's leases in effect prior to

10  2003 violated the Truth-in-Leasing regulations to some degree even under the

11  lesser substantial compliance standard, and that Swift's leases in effect starting in

12  2003 sufficiently complied with the Truth-in-Leasing regulations even under the

13  literal compliance standard.

14

15  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

16  action.  Although Swift's motion lists Bibicoff as a former Swift driver, that was
   apparently done in error, notwithstanding the plaintiffs' failure to dispute it, as
17  there is nothing in the summary judgment record establishing that Bibicoff ever
   signed a lease with Swift.

18         The Court further notes that it has considered the parties' exhibits in
   resolving the summary judgment motions, notwithstanding the parties' improper
19  failure to authenticate the exhibits, as neither side has objected to any of the
   exhibits. *See* Orr v. Bank of America, NT & SA, 285 F.3d 764 (9th Cir. 2002).  The
20  Court has not, however, searched the record for evidence not properly and/or
   specifically identified in the parties' statements of facts as required by LRCiv 56.1.
21  *See* Clarr v. Burlington Northern R. Co., 29 F.3d 499, 504 (9th Cir. 1994) ("It is not
   the district court's job to sift through the record to find admissible evidence in
22  support of a non-moving party's case."); *accord*, Keenan v. Allan, 91 F.3d 1275,
23  1279 (9th Cir. 1996).

24         The Court additionally notes that it has intentionally not discussed
   every argument raised by the parties and that those arguments not discussed
25  were considered by the Court to be unnecessary to the resolution of the pending
26  motions.

B. Liability

49 CFR § 376.12, the section of the Truth-in-Leasing regulations that sets forth what must be contained in the owner-operators' leases, contains twelve subsections.  The plaintiffs' amended complaint alleges in Counts I[4] and II[5] that the Swift leases violate eight of those subsections.  Notwithstanding the totality of the allegations of Counts I and II, the plaintiffs' summary judgment motion is limited solely to the issue of Swift's liability pursuant to § 376.12(h), the charge-back provision, as it relates to Swift's deductions from their compensation for physical damage insurance, non-trucking use liability insurance, occupational accident insurance, Qualcomm service, accounting services, Comdata cash advance service fees, and fuel purchased at Swift terminals or with fuel cards.[6]

---

[4]      Count I, in its current posture, alleges that Swift is engaging in the unlawful provision of transportation services in equipment that it does not own because the leases governing its use of the equipment fail to conform to the Truth-in-Leasing regulations, by either failing to contain provisions required by 49 C.F.R. § 376.12, or by containing provisions that conflict with § 376.12.  The count seeks economic damages allegedly suffered by the plaintiffs as a result of Swift's violation of federal law, and injunctive relief barring Swift from providing transportation in leased equipment until it executes leases conforming to the Truth-in-Leasing regulations.

[5]       Count II, in its current posture, alleges that Swift does not adhere to or perform the obligations established by the Truth-in-Leasing regulations set forth in 49 C.F.R. Part 376.  The count seeks damages for Swift's alleged violation of the Truth-in-Leasing regulations, and seeks to enjoin Swift from engaging in business practices that violate the Truth-in-Leasing regulations.

[6]       It is not clear to the Court whether the limited nature of the plaintiffs' motion means that the plaintiffs have abandoned their other allegations of liability in Counts I and II not related to charge-backs, or whether they simply believe that the unmentioned grounds are not suitable for resolution by summary judgment.

While the main focus of Swift's motion is also directed at § 376.12(h), it also seeks summary judgment as to all aspects of Counts I and II, including liability and damages and injunctive relief.[7]

(1) Violation of § 376.12(h)

The charge-back regulation, § 376.12(h), provides that

[t]he lease shall clearly specify all items that may be initially paid for by the authorized carrier, but ultimately deducted from the lessor's compensation at the time of payment or settlement, together with a recitation as to how the amount of each item is to be computed. The lessor shall be afforded copies of those documents which are necessary to determine the validity of the charge.

The parties separate the Swift leases into "old form" leases, *i.e.* those before 2003, and "revised" leases, *i.e.* those entered into on or after January 1, 2003.[8]  For purposes of the individual plaintiffs' liability claims, the relevant revised leases only go through 2005, as that is when the last individual plaintiff stopped driving for Swift.

(a) Old Form Leases

While Swift concedes that its old form leases did not literally comply with

---

[7]
    It also is not clear to the Court whether Swift's reference to seeking judgment against the "plaintiffs" in Counts I and II is meant to include just the individual plaintiffs who ever signed leases with Swift, or whether it also includes OOIDA (assuming that OOIDA is meant to be a plaintiff in Counts I and II, which is not clear from the amended complaint).
    Another problem with Swift's motion is that it seeks judgment as to the entirety of Count I, it does not specifically discuss all of the grounds for liability raised in Court I, *e.g.* the alleged violations of § 376.12(d), (e), (g), (j) and various subparts of (k).

[8]
    It is the position of both parties that, for purposes of the summary judgment motions, the old form leases are materially uniform to each other and the revised leases are materially uniform to each other.

1  § 376.12(h) in some material respects, it disputes the plaintiffs' contention that

2  the old form leases did not even substantially comply with the charge-back

3  regulation.  Swift's general contention is that it has substantially complied with the

4  regulation because the plaintiffs were always provided an identification of all

5  charge-back items and either the amount of the charge-back or a calculation of

6  the charge-back before they executed the leases.  Swift has supported its

7  summary judgment motion with an affidavit from Randall H. Eslick, who since

8  1995 has been in charge of overseeing Swifts' owner-operators, including their

9  training.  The gist of Eslick's affidavit is that Swift has made the charge-back

10  disclosures required by the Truth-in-Leasing regulations to owner-operators since

11  at least June 1, 1998 during the orientation program or by other means prior to

12  the execution of the lease agreements.

13      The Court concludes that the evidence of record establishes that Swift's old

14  form leases, under any standard of liability, violated the charge-back regulation at

15  least to the extent that those leases did not disclose the fact that certain of the

16  charge-backs included a "mark-up", *i.e.*, a sum added by Swift as compensation

17  for its administrative costs in supplying the products or services to the owner-

18  operators and/or to provide it with a profit on those products and services.

19                          (i) Existence of Mark-ups

20      The plaintiffs contend that Swift violated the Truth-in-Leasing regulations in

21  part because it charged-back more for certain services and products than it paid

22  to third-party vendors; they argue, for example, that Swift "illegally profited" on

23  fuel charge-backs and on insurance premium charge-backs.  The Court

24  disagrees.  While there is some scant case law supporting the plaintiffs' position,

25  *see e.g.*, Owner-Operator Independent Drivers Ass'n  v. Ledar Transport, 2004

26  WL 5249148, at *6 n.36 (W.D.Mo. Dec. 30, 2004) (Court, referring to an ICC

report issued the year before the current version of the Truth-in-Leasing

regulations was adopted, briefly stated in a footnote that the regulatory history of

§376.12(h) indicates that charge-backs that exceed the actual amount advanced

by the motor carrier are unlawful), the majority of the few courts that have

specifically dealt with the issue have much more persuasively concluded that it is

not unlawful for a charge-back to consist of more than the actual amount

advanced by the carrier. *See e.g.*, Owner-Operator Independent Drivers Ass'n  v.

Landstar System, Inc,, 2006 WL 4069044, at *6-7 (M.D.Fla. Oct. 6, 2006) (Noting

that the Truth-in-Leasing regulations are silent regarding the ability of a motor

carrier to include administrative fees or profits on charge-backs, the court

concluded that it is not unlawful for carriers to charge more for products and

services that they pay third-party vendors because the legislative history of the

regulations makes clear that the ICC considered a total ban on profits and

rejected it before adopting the current version of the regulations); Owner-

Operator Independent Drivers Ass'n  v. C.R. England, Inc., 2007 WL 1795768, at

*7 (D.Utah June 20, 2007) (Court concluded  that "charge-backs that include

profits and fees are not *per se* unlawful under § 376.12(h); the [Truth-in-Leasing]

Regulations do not preclude Defendant from making a profit.")  The Court

concludes that Swift did not violate § 376.12(h) by including a mark-up on some

of the charge-backs.

(ii) Recitation of the Manner of the Calculation

The plaintiffs also contend that Swift has violated that portion of the charge-

back regulation that requires that there be "a recitation as to how the amount of

each item is to be computed."  Swift argues that what it perceives as an ambiguity

in the regulation concerning what "recitation" means can only be resolved by

concluding that the required disclosure is achieved by either a statement of the

1  amount of the charge-back or if that amount is not available at the time of the

2  execution of the lease, by a statement as to how the charge-back is to be

3  computed.  Swift's general position is that while it did not always include this

4  information in its pre-2003 leases, the plaintiffs were informed of the amount of

5  the charge-backs or their calculation during their orientation before they executed

6  their leases.[9]   Examples of this dispute include the charge-backs for fuel and

7  insurance premiums - while it is undisputed that Swift informed its owner-

8  operators that they would be charged for fuel they purchased at Swift's terminals

9  at the posted fuel price and informed them of the amount of the premiums for

10 insurance purchased through Swift,  it is also undisputed that Swift never

11 disclosed to the owner-operators how those costs were calculated, *i.e.* never

12 disclosed the existence of various mark-ups over the prices Swift paid for the fuel

13 and insurance.

14      To the extent that the plaintiffs are arguing that this "recitation" provision

15 requires that the actual amount of any mark-up be disclosed to owner-operators,

16 the Court is not persuaded and concludes otherwise. *See e.g.*, OOIDA  v.

17

18      [9]

19      The plaintiffs do not dispute the following costs were in fact disclosed by
   Swift with regard to the pre-2003 leases for purchasing services and products

20 from Swift:
      Insurance - that physical damage insurance was 2.5% per $1,000 of

21    tractor value per week, that non-trucking use liability insurance was
      $8.08 per week, and that occupational accident insurance was

22    $36.92 per week.
      Qualcomm service - was $26.42 per week.

23    Accounting services - was $15.00 per week.
      Comdata cash advances - was a $3.00 fee for each cash advance.

24    Fuel - would be charged posted price.

25

26

1   Landstar System, Inc., 2006 WL 4069044, at *8 (M.D.Fla. Oct. 6, 2006) ("The

2   legislative history makes clear that the [charge-back] regulation does not require

3   the lease to state on the face of the lease the amount of ... the mark-ups[.]")

4   (Footnote omitted).

5        However, while the actual amount of the mark-up need not be disclosed,

6   the Court rejects Swift's argument that the fact that a charge-back includes a

7   mark-up need not be disclosed.  The Court concludes that it is a violation of the

8   charge-back regulation for a carrier to fail to disclose the existence of a mark-up

9   included in a charge-back. *See e.g.*, OOIDA v. C.R. England, Inc., 2007 WL

10   1795768, at *4 (D.Utah June 20, 2007) (Court found that the carrier violated

11   § 376.12(h) in part by failing to disclose certain mark-ups.); OOIDA v. Landstar

12   System, Inc., 2006 WL 4069044, at *7-8 (M.D.Fla. Oct. 6, 2006) (Court rejected

13   carrier's argument that § 376.12(h) doesn't require charge-back mark-ups to be

14   disclosed.)

15                  (iii) Documentation of Charge-backs

16        The plaintiffs further contend that Swift has violated that portion of the

17   charge-back regulation that provides that the owner-operator "shall be afforded

18   copies of those documents which are necessary to determine the validity of the

19   charge."  Nothing in the Truth-in-Leasing regulations explains what "afforded"

20   means, and the parties have done very little to bring any enlightenment to this

21   issue.   It is apparently the plaintiffs' position that all of Swift's leases at issue

22   failed to comply with this requirement because they did not disclose the right of

23   the owner-operators to receive documentation supporting the amount of the

24   charge-backs.  Swift, while otherwise essentially ignoring the documentation

25   issue, contends only that "afford" means to "make available" and that the plaintiffs

26   have not submitted any evidence that they were refused documents by Swift to

1   determine the validity of the charge-backs; Swift does not argue that any of its

2   leases informed the owner-operators that they could see the underlying

3   documentation.

4          The plaintiffs, in an argument not responded to by Swift, assert that it is

5   clear that Swift never provided the required documentation necessary for them to

6   determine the validity of the charge-backs because Swift "claims confidentiality

7   for the very information and documentation which § 376.12(h) commands it to

8   provide to owner-operators to allow them to determine the validity of the

9   chargebacks" - the basis for this argument is that Swift has refused to disclose

10  documentation during discovery, without a protective order, regarding its costs

11  related to fuel charges, insurance charges, and transaction fees on the ground

12  that such information constitutes confidential, proprietary business information,

13  and has refused to produce at all documentation related to its Qualcomm costs

14  on the ground that it constitutes confidential, proprietary business information and

15  is protected by a confidentiality agreement with Qualcomm.

16         Since the Court has concluded that the actual amount of any mark-up need

17  not be disclosed, the Court further concludes that Swift is not required by the

18  charge-back regulation to provide its owner-operators with confidential and

19  proprietary business information underlying its mark-ups.  *See* Owner-Operator

20  Independent Drivers Ass'n v. Landstar Inway, Inc., 2007 WL 958284, at *7

21  (M.D.Fla. March 29, 2007) (Court concluded that the carrier's charge-back for

22  Qualcomm's services was not a charge-back for § 376.12(h)'s purposes for which

23  the owner-operators had to be afforded copies of Qualcomm's confidential pricing

24  information to determine the validity of the charge-back.)

25         The purpose of the documentation provision is to allow owner-operators to

26  ascertain whether they are being properly charged for the products and services

1  advanced to them by the carrier.   While it does not appear that Swift's old form

2  leases actually informed the owner-operators that they could view documentation

3  from which the validity of the charge-backs could be determined, the plaintiffs do

4  not dispute that Swift provided them with weekly settlement sheets detailing the

5  charge-backs, and they have not cited the Court to any evidence establishing that

6  those settlement sheets did not provide sufficient information to allow them to

7  determine whether or not the charge-back rates previously disclosed to them

8  were being used to determine their charge-backs. *See id.* (Court concluded that

9  the carrier's settlement statements to the owner-operators constituted sufficient

10  documentation under the literal compliance standard to determine the validity of

11  charge-back items.)   While Swift would have violated § 376.12(h) if it refused to

12  provide an owner-operator with non-confidential documentation of the charge-

13  backs upon request, *see e.g.*, OOIDA v. C.R. England, 2007 WL 1795768, at *3

14  (D.Utah June 20, 2007), the plaintiffs have not controverted Swift's argument that

15  none of them ever asked for any additional underlying documentation of the

16  charge-backs.

17       The Court thus concludes that the moving plaintiffs are entitled to a

18  declaration that Swift violated § 376.12(h) to the extent that Swift never disclosed

19  to them prior to 2003 the fact that the amount of certain of the deductions from

20  their compensation for products and services purchased from or through Swift

21  included an amount over and above the price that Swift paid to third-party

22  vendors for those products and services.

23            (b) Revised Leases

24       Swift revised its owner-operator leases starting in January 1, 2003,

25

26

apparently as a result of this litigation.[10]  Swift's basic position is that the revised leases at issue complied with the Truth-in-Leasing regulations even under the literal compliance standard because the charge-backs and their amounts not itemized in the body of the revised lease were itemized in a Schedule B attached to each lease, and that the information provided in the revised lease form specified whether the charge-back was the actual charge to Swift or included a mark-up.[11]  The actual amounts of the mark-ups, whether profit, administrative

---

[10]      The evidence of record establishes that only plaintiffs Belcher and Hayes entered into leases with Swift that used the revised form of the lease. Belcher stopped driving for Swift in 2004 and Hayes stopped driving for Swift in 2005.

[11]      For example, Belcher's January 1, 2003 lease states in ¶ 4 that the deduction for the owner-operator's purchase or rent of company furnished products, equipment or services "may include amount's to cover COMPANY's administrative costs or offering and maintaining such products, equipment or services[,]" it states in  ¶ 14 regarding Comdata card cash advances that the charge-back will include "three dollars ($3.00) to cover costs and administrative expenses[,]" and it states in ¶ 15 regarding fuel purchases that the "posted pump price may include the cost of the fuel, taxes, other government fees and charges, delivery/freight costs and administrative expenses."

Schedule B to Belcher's January 1, 2003 lease supplements the lease provisions by stating:

| Account | Amount | Schedule |
|---|---|---|
| Performance Bond | $100 | Weekly (maximum $1,500.00) |
| Single Rate Registration | $25.00 | Weekly (maximum $250.00) |
| Qualcomm | $26.42 | Weekly |
| O/O Nontrucking Liability Insurance* | $8.08 | Weekly |
| O/O Collission [sic] Insurance* | An equal amount of $25 to $1000 of | Weekly |

-12-

1  fees, etc., were not disclosed in the revised leases.

2        While the plaintiffs concede that the revised leases disclosed the charge-

3  back items and the amount of the individual charge-backs, they contend that the

4  revised leases still violated the Truth-in-Leasing regulations because they did not

5  disclose how the charges were calculated and they failed to disclose that the

6  owner-operators were entitled to receive documentation supporting the validity of

7  the charges.

8                    (i) Recitation of the Manner of the Calculation

9        Although the plaintiffs repeatedly, and entirely conclusorily, assert that the

10  disclosures in the revised leases regarding the mark-ups were "patently

11  inadequate" to comply with the charge-back regulation, the Court disagrees and

12  concludes that Swift's revised leases sufficiently disclosed how the charge-backs

13  were calculated because it is specified within the lease itself whether the basis of

14  the  computation was the actual cost to Swift, or on its cost plus a mark-up in the

15

16

17  ─────────────────

18                                  stated value of the
                                    vehicle divided by
19                                   52
        Qualcomm Insurance          $1.96              Weekly
20      Occupation Accident         $36.92             Weekly
21          Insurance*
        Accounting Services          $15.00            Weekly
22      Medical Insurance           $52.03 (single)    Weekly
                                    $145.65 (family)   Weekly
23      Workers' Compensation       $40.38             Weekly
        for Contractor Employees
24

25      * The charge for this item includes the cost of the item, plus
        administrative costs associated with offering and maintaining the
26      item.

                                    -13-

1  form of an administrative fee, etc.[12]  *See*  OOIDA v. Ledar Transport, 2000 WL

2  33711271, at *7 (W.D.Mo. Nov. 3, 2000) (Court noted that the recitation of how

3  the amount of the charge-back is to be computed includes "whether Defendant

4  will deduct simply the actual cost of the charge, or the cost plus administrative

5  fees, etc.") *See also*, OOIDA v. Landstar Inway, Inc., 2007 WL 958284, at *7

6  (M.D.Fla. March 29, 2007) (Court, using a literal compliance standard, concluded

7  that a lease properly recited how a charge-back was computed because the

8  lease specified that when an exact amount of a charge-back would not be known

9  until liability is incurred, the owner-operators would be charged a "variable" cost -

10 the Court noted, for example, that the lease disclosure specifying that the amount

11 of a tire purchase would be "variable, plus $6 per tire" complied with the

12 computation disclosure requirement of § 376.12(h).)

13                     (ii) Documentation of Charge-backs

14      While the plaintiffs contend that the revised leases still violated the charge-

15 back regulation's requirement that they be afforded the documents necessary to

16 determine the validity of the charge-backs, the Court disagrees to the extent that

17 the revised leases stated that the deductions from the owner-operators'

18 compensation for advances and charges would be itemized on their settlement

19 statements and the plaintiffs have failed to cite to any evidence in their

20 _____

       [12]

21      According the plaintiffs, Swift amended its latest lease form, effective

22 in January 2007, to disclose for the first time that the Qualcomm weekly charge

23 included an administrative fee mark-up. They argue that this recent disclosure,
   accomplished by adding the Qualcomm charge to the footnote in Schedule B

24 denoting a mark-up, while still insufficient, serves to confirm that the pre-2007
   revised leases "completely hid such charges."  The plaintiffs' statements of fact,

25 however, do not cite to any evidence that Swift included any administrative fee
   mark-up for the Qualcomm charges assessed against Belcher and Hayes during

26 the period covered by their revised leases.

1  statements of fact showing that Swift's weekly settlement statements were

2  insufficient to comply with the documentation requirement. *See* OOIDA v.

3  Landstar Inway, Inc., 2007 WL 958284, at * 7 (M.D.Fla. 2007) (Court concluded

4  that appropriate documentation for charge-backs that the lease disclosed were

5  calculated based on a "variable" cost were satisfied by a settlement statement

6  issued to the owner-operators that reflected the total charge, and that for charge-

7  backs that were disclosed as being calculated with a fixed rate with a mark-up,

8  "the only documents necessary to determine the validity of those charges are

9  documents showing that the owner-operators were in fact charged the amounts

10  that are stated in the lease", and that settlement statements to the owner-

11  operators reflecting the amount that was charged-back were sufficient

12  documentation.)

13      The Court thus concludes that Swift is entitled to summary judgment on all

14  claims against it in the amended complaint that its post-January 1, 2003 leases

15  with plaintiffs Belcher and Hayes violated § 376.12(h).

16      (2) Violation of § 376.12(i)

17      Count II of the amended complaint alleges in part that Swift has "required

18  owner-operators to purchase insurance and other products as a condition to

19  entering into lease agreements in violation of 49 C.F.R. § 376.12(i)."[13] Swift

20  _____

[13]

21      § 376.12(i) states:

22  The lease shall specify that the lessor is not required to purchase or
23  rent any products, equipment, or services from the authorized carrier
    as a condition of entering into the lease arrangement.  The lease
24  shall specify the terms of any agreement in which the lessor is a
    party to an equipment purchase or rental contract which gives the
25  authorized carrier the right to make deductions from the lessor's
26  compensation for purchase or rental payments.

-15-

1    specifically argues in its summary judgment motion that it is entitled to judgment

2    on all claims against it alleging forced purchases because the plaintiffs have not

3    offered any evidence that any owner-operator was forced to purchase any goods

4    or services, including insurance, from or through it, and because the plaintiffs do

5    not dispute that all of its leases have at all relevant times unequivocally stated

6    that the owner-operators were not required to purchase or rent equipment or

7    services from it.

8         The Court concurs, as the plaintiffs have not in fact cited to any evidence of

9    record establishing any violation by Swift of § 376.12(i).  The plaintiffs' only

10   response to Swift's argument regarding alleged forced purchases is a totally

11   conclusory contention that the fact that the Swift leases recited the language of

12   § 376.12(i) is not conclusive of the issue.  The plaintiffs' sole elaboration of their

13   contention is a mere citation to <u>Tayssoun Transportation, Inc. v. Universal Am-</u>

14   <u>Can, Ltd.</u>, 2005 WL 1185811 (S.D.Tex. April 20, 2005), wherein the court

15   concluded that a carrier's lease violated § 376.12(i) notwithstanding that it

16   expressly stated that the owner-operator was not required to purchase items from

17   the carrier  because another portion of the lease expressly required the owner-

18   operator to purchase cargo insurance from the carrier. 2005 WL 1185811, at *19.

19   The <u>Tayssoun</u> case is factually inapposite because the plaintiffs have not cited to

20   any evidence of record showing that anything similar occurred to them.

21        The Court thus concludes that Swift is entitled to summary judgment on all

22   claims against it in the amended complaint that it violated § 376.12(i).

23        (3) Violation of § 376.12(k)

24        Counts I and II of the amended complaint allege in part that Swift violated

25   various subparts of  49 C.F.R. § 376.12(k), which deals with escrow funds.  Swift

26   argues that it is entitled to summary judgment on all of the plaintiffs' claims that it

-16-

1  violated § 376.12(k)(2) by making improper deductions from their escrow

2  accounts, and all of their claims that it violated § 376.12(k)(6) by failing to return

3  unused escrow accounts within 45 days of lease termination.[14]  Swift's contention

4  is that the plaintiffs' discovery responses have not provided any substance to the

5  conclusory escrow-related allegations in the amended complaint, nor have they

6  provided any support for those allegations by, *e.g.*, identifying a single improper

7  deduction.[15]  Swift also contends that the plaintiffs have not set forth any

8  damages they have sustained as a result of any violation of the escrow

9  regulation.

10      The plaintiffs' only argument as to why Swift is not entitled to summary

_____

[14]    Although Swift generally states that it is entitled to summary judgment on all of the plaintiffs' escrow-related claims, its motion only specifically refers to the plaintiffs' claims concerning violations of § 376.12(k)(2) and (6).  Not mentioned by Swift, or by the plaintiffs in their response, is that Count I of the amended complaint also alleges that Swift violated other parts of the escrow regulation, including § 376.12(k)(3) and (4), as well as other portions of (k)(6) than those referred to in Swift's motion.
    Section 376.12(k)(2) provides that a lease requiring escrow funds must specify "[t]he specific items to which the escrow fund can be applied."

[15]    Count III of the amended complaint alleges that the Swift defendants breached their fiduciary duties owed to their owner-operators as a result of the required escrow accounts by failing to observe the escrow requirements of the Truth-in-Leasing regulations, by dissipating the escrow accounts, by failing to pay interest on the accounts, and by failing to return the escrow accounts.  The Swift defendants filed a separate summary judgment motion that in part sought the dismissal of Count III; in that motion they argued in part that the plaintiffs had not produced any evidence that the defendants had mishandled a single escrow account.  Rather than filing a response going to the merits of that motion, plaintiffs Mayfield, Belcher, Hayes, and Helton entered into a stipulation with the Swift defendants that dismissed Count III with prejudice.

judgment on their escrow-related allegations, which argument is directed only to the issue of liability and not damages, is that the performance bond requirement of some unidentified Swift lease was so broad that it violated § 376.12(k)(2).[16] The plaintiffs do not, however, make any effort to controvert Swift's argument regarding alleged violations of § 376.12(k)(6), or to establish that any improper deductions were in fact made from their escrow funds.

The Court agrees with the plaintiffs that the performance bond requirement in Swift's old form leases violated the escrow disclosure regulation because the provision did not specify the specific items to which the performance bond could be applied. *See* Owner-Operator Independent Drivers Ass'n  v. Arctic Express, Inc., 159 F.Supp.2d 1067, 1077-78 (S.D.Ohio 2001) (Court concluded that a purported maintenance fund that permitted the withholding of the owner-operator's escrow funds for almost any conceivable obligation that could be incurred by the owner-operator during the term of the lease was in fact a general fund that violated both the letter and the spirit of § 376.12(k) because when the defendants "provided for everything to be covered by the maintenance fund, they,

---

[16]
  The portion of the Swift lease provision quoted by the plaintiffs, which it identifies only as being in ¶ 6 of the lease, states:

> All or any portion of the bond may be applied by COMPANY to satisfy any indebtedness incurred by the CONTRACTOR in connection with the performance of this agreement. ...

Swift states, without contravention by the plaintiffs, that the quoted lease provision applied only to its pre-2003 leases.  Swift amended the performance bond provision in its revised leases to identify the specific items which could be deducted from the performance bond and the plaintiffs do not argue that the revised version violates § 376.12(k)(2)

1  in reality, specified nothing.")[17] *Accord*, OOIDA v. Ledar Transport, 2004 WL

2  5429148, at *2 (W.D.Mo. Dec. 30, 2004) (Court, citing to Arctic Express,

3  concluded that a security deposit lease provision violated § 376.12(k)(2) because

4  its failure to specify the items that could be deducted from it turned it into an

5  impermissible general fund that could be used to satisfy any obligation incurred

6  by the owner-operator.)

7       The Court thus concludes that the plaintiffs are entitled to a declaration that

8  Swift violated § 376.12(k)(2) to the extent that the performance bond provision of

9  Swift's old form leases failed to properly specify the items that could be deducted

10  from the bond, and that Swift is entitled to summary judgment on all other claims

11  against it in the amended complaint that it violated § 376.12(k)(2) by making

12  improper deductions from the plaintiffs' escrow accounts and all claims against it

13  that it violated § 376.12(k)(6) by failing to timely return unused escrow accounts

14  to the plaintiffs.

15  C. Damages

16       The relief sought by the plaintiffs in their amended complaint for Swift's

17  alleged violations of the Truth-in-Leasing regulations includes damages pursuant

18  to 49 U.S.C. § 14704(a)(2), which provides in relevant part that an authorized

19  motor carrier "is liable in damages sustained by a person as a result of an act or

20  omission of that carrier ... in violation of this part." *See* Owner-Operator

21  Independent Drivers Ass'n v. New Prime, Inc., 339 F.3d 1001, 1012 (8th Cir.

22

       17

23       Although Swift argues in its reply that the pre-2003 performance bond
24  provision was not as broad as the plaintiffs suggest because the lease specifically
   limited deductions only to those items that actually arose "in connection with the
25  performance[,]" that argument does nothing to controvert the
   fact that the performance bond provision failed to identify the specific items that
26  could be deducted from the bond.

1   2003), *cert. denied*, 541 U.S. 973 (2004) (Court noted that § 14804(a)(2) provides

2   a right to recover only to persons who have sustained damages as a result of a

3   carrier violation.); *see also*, OOIDA v. Landstar Inway, 2007 WL 958284, at *5

4   (M.D.Fla. March 29, 2007) (Court concluded that in order to establish damages,

5   the plaintiffs were required to present evidence that they sustained damages "as

6   a result" of the defendants' failure to disclose pursuant to § 376.12(h).)   Courts

7   have required actual damages, concluding that a mere violation of the Truth-in-

8   Leasing regulations is an insufficient basis on which to recover monetary

9   damages. *See e.g.*, Robertson v. North American Van Lines, Inc., 2004 WL

10  5026265, at *4 (N.D.Cal. April 19, 2004) (Court concluded that "[a] carrier's

11  violation of federal regulations does not, in and of itself, entitle a plaintiff to

12  recovery, as the plaintiff must still prove damages.")   The plaintiffs bear the

13  burden of proving damages under § 14704(a)(2).  OOIDA v. Landstar Inway, Inc.,

14  2007 WL 958284, at * 5 (M.D.Fla. March 29, 2007).

15       As part of its motion, Swift specifically argues that it is entitled to summary

16  judgment on all of the plaintiffs' claims for damages because the plaintiffs have

17  no evidence that they sustained damages as a result of any alleged violation by

18  Swift of the Truth-in-Leasing regulations.  The plaintiffs, however, in an

19  inexplicable refusal to recognize that Swift has properly placed the existence of

20  damages at issue at the summary judgment stage, heedlessly assert that the

21  pending motions only concern the issue of liability and that they will put on

22  evidence of their damages at trial.[18]   There has not in fact been any bifurcation of

23  ─────────────────────

[18]

24       The plaintiffs, for example, in response to Swift's statement of fact no.
25  33 regarding the items for which the plaintiffs are seeking damages, merely state
    that these are legal issues and that they "will address these legal issues at an
26  appropriate time in a memorandum of law submitted to the Court."  In addition, in

the issues of liability and damages in this action and the plaintiffs, as the party

with the burden of proving that they have suffered monetary damages resulting

from any violation by Swift of the Truth-in-Leasing regulations, can only survive

summary judgment as to the issue of damages by producing significant probative

evidence of their damages.[19]   The Court concurs with Swift that the plaintiffs have

clearly not done so.[20]

---

response to Swift's notice of supplemental authority, wherein Swift submitted a copy of OOIDA v. Landstar Inway, Inc., 2007 WL 958284 (M.D.Fla. March 29, 2007), expressly because of that court's damages-related rulings, the plaintiffs state that the Landstar case is in effect inapposite because they "have not yet put forth their damages evidence at this time.  Plaintiffs *will* put forth that evidence at trial in this case - once this Court rules on the parties' summary judgment motions regarding liability." (Emphasis in original).

[19]    None of the plaintiffs' statements of fact directly relate to the issue of the plaintiffs' damages.

[20]        The gist of the plaintiffs' main response to Swift's damages argument is their contention that they are not required to prove damages as a prerequisite to establishing Swift's liability under the Truth-in-Leasing regulations.   While that's legally correct, as Swift effectively concedes, *see e.g.,* Owner-Operator Independent Drivers Ass'n  v. Allied Van Lines, Inc., 231 F.R.D. 280, 284 n.10 (N.D.Ill. 2005) (Court rejected argument that a showing of sustained damages is a predicate for liability in a Truth-in-Leasing regulations case); OOIDA v. C.R. England, Inc., 2007 WL 1795768, at *7 (D.Utah June 20, 2007) ("Actual damages are not a predicate for, or an element of *liability* under 49 U.S.C. § 14704(a)(2).") (emphasis in original), it is not responsive to the actual damages issue raised by Swift.  While there is some loose language in the damages portion of Swift's motion, *i.e.*, its statement that the plaintiffs "cannot establish liability on their claims without demonstrating actual economic harm[,]" it's clear that the gist of Swift's contention regarding damages is that it should be granted summary judgment on all claims for monetary loss because the plaintiffs have none.  *See* OOIDA v. Landstar Inway, Inc., 2007 WL 958284, at *6 (M.D.Fla. March 29, 2007) (Court entered judgment in favor of the defendants on the issue of damages because the plaintiffs had failed as a matter of law to establish

1    Swift argues that it is entitled to summary judgment on all of the plaintiffs'

2  claims for monetary loss in Counts I and II in part because the legal theory

3  underlying the plaintiffs' claimed damages is fatally flawed as a matter of law

4  inasmuch as the damages they are seeking to recover consist only of Swift's

5  mark-ups on charge-back items.[21]  The Court concurs since the majority of the

6  courts that have specifically dealt with the issue of damages related to

7  undisclosed mark-ups for charge-backs have concluded that an owner-operator

8  has not suffered damages for purposes of § 14704(a)(2) merely because a motor

9  carrier charged-back more that it actually paid a third-party vendor for a product

10  or service advanced to the owner-operator.  *See e.g.*,  OOIDA v. C.R. England,

11  Inc., 2007 WL 1795768, at *7 (D.Utah June 20, 2007) ("Simply proving that

12  Defendant charged more to Plaintiffs for a product or service that it paid to a third-

13  party vendor is insufficient, without more, to establish that Plaintiffs have

14  sustained damages as a result of a disclosure violation under § 376.12(h).");

15  OOIDA v. Landstar Inway, Inc., 2007 WL 958284, at *5 (M.D.Fla. March 29,

16  2007) ("The Court finds that proof of the difference between Defendants' third-

17  ───────────────────

18  damages as a result of the defendants' violation of § 376.12(h).

19    [21]    Swift's description of the plaintiffs' damages theory, which is unrefuted
   by the plaintiffs as they fail to even discuss it in their response to Swift's motion,
20  is supported by the record in that the plaintiffs state in their amended complaint
   that part of the relief they seek is a return of all monies deducted from their
21  compensation in violation of the Truth-in-Leasing regulations, they state in their
   summary judgment motion that they are seeking judgment in part for undisclosed
22  mark-ups, and the summary judgment record contains a letter from the plaintiffs'
   counsel to Swift's counsel dated November 17, 2006 wherein the plaintiffs seek
23  disgorgement and/or damages consisting of the mark-ups, administrative fees,
24  and discounts not disclosed to them in their leases, *i.e.* "undisclosed,
   undocumented and excessive charges for fuel, QualCom usage, various
25  insurance coverages, accounting fees, and Comdata transaction fees".

26

party costs and the prices they charged Plaintiffs does not, standing alone, establish that Plaintiffs sustained damages as a result of the violation [of § 376.12(h)'s disclosures requirements.]")

While the plaintiffs have established as a matter of law that Swift's old form leases violated § 376.12(h) by failing to disclose the existence of mark-ups and violated § 376.12(k)(2) by failing to disclose the specific items that could be deducted from the performance bond, the plaintiffs have not established that they suffered any actual damages therefrom under any theory of damages.  Swift has established through the affidavit of Randall Eslick, its owner-operator manager, that the actual charge-backs to the plaintiffs driving for Swift did not exceed the amounts disclosed to them either in their leases, orientation materials, driver's manuals, etc. , and the plaintiffs do not make any attempt to argue otherwise. [22]

The Court thus concludes that Swift is entitled to summary judgment on all claims for damages against it in Counts I and II of the amended complaint.

D. Injunctive Relief

Swift also argues in its motion that it is entitled to summary judgment on the plaintiffs' request in the amended complaint that Swift be enjoined pursuant to

---

[22]

Swift, asserting that its charge-back prices were below market value, also argues that the plaintiffs have not, and cannot, establish that they sustained any actual economic harm from any violation of the charge-back disclosure rules because they cannot show that the total charge-back price they paid to Swift for any goods or services was more than they would or could have paid to anyone else to obtain the same goods or services.  While Swift has established through Randall Eslick's testimony that the owner-operators fueling at Swift's terminals were always charged one cent per gallon less than the prevailing market rate, a fact which the plaintiffs have not controverted, the Court cannot conclude from the evidence of record that Swift has otherwise established that every product or service it offered to the plaintiffs was in fact  priced below market value.

1  49 U.S.C. § 14704(a)(1) "from performing authorized transportation in equipment

2  it does not own until it enters into written lease agreements that meet the

3  requirements of the Truth-in-Leasing regulations found at 49 C.F.R. § 376.12."[23]

4  Swift contends that injunctive relief is not appropriate because its current 2007

5  lease form fully complies with the Truth-in-Leasing regulations and there is no

6  reasonable expectation that it will reinstate an unconforming lease form.   The

7  plaintiffs argue that injunctive relief is the only way to make Swift comply with the

8  Truth-in-Leasing regulations because the current lease still does not comply with

9  the charge-back disclosure rule regarding mark-ups and because Randall Eslick

10  states in his affidavit that "Swift has no intention to change the terminology of this

11  [2007] Contractor Agreement absent an order from this Court to do so or to meet

12  future interpretations of or changes to the leasing regulations."

13       The Court agrees with Swift that no basis for injunctive relief remains in this

14  action.  First, with regard to the individual plaintiffs, no injunctive relief is possible

15  since none of them have driven for Swift for several years now (with the last one,

16  Hayes, having stopped in 2005) and they have not presented any evidence that

17  there is any reasonable expectation that any of them will ever again enter into an

18  owner-operator lease agreement with Swift.  Second, to the extent that OOIDA

19  has any surviving claims against Swift and/or retains its associational standing to

20  challenge the compliance of Swift's current owner-operator lease with the Truth-

21  in-Leasing regulations, no showing has been made that Swift's current lease

22

23  _____

[23]

24        The Court denied the plaintiffs' motion for a preliminary injunction on

25  March 25, 2003, and that denial was subsequently upheld by the Ninth Circuit in

    Owner-Operator Independent Drivers Ass'n  v. Swift Transportation Co., 376 F.3d

26  1108 (9th Cir. 2004).

1  does not sufficiently comply with the regulations.[24]

2       Therefore,

3       IT IS ORDERED that Plaintiffs' Motion for Partial Summary Judgment on

4  Liability (doc. #337) is granted in part and denied in part.  It is granted solely to

5  the extent that the Court declares as follows:

6       (1) That defendant Swift Transportation Co., Inc. (AZ) violated 49 C.F.R.

7  § 376.12(h) by failing to disclose to plaintiffs Marc Mayfield, Frank Belcher, David

8  Hayes, Valerie Helton, and Gerald Webb prior to January 1, 2003 that certain of

9  its deductions from their compensation for services and products it advanced to

10  them were in excess of its costs;

11

[24]

12       The Court rejects the plaintiffs' contention that Swift's 2007 lease form
13  fails to comply with § 376.12(h).  The Court notes that ¶ 4 of the current lease
    form, which relates to company furnished products, equipment or services, is
14  compliant with the Court's conclusions herein regarding what the charge-back
    regulation requires in that the lease states:

15

16       The CONTRACTOR is not required to purchase or rent any
        products, equipment or services from the COMPANY.  In the event
17       that CONTRACTOR elects to purchase or rent products, equipment
        or services from the COMPANY, CONTRACTOR agrees that the
18       COMPANY may deduct amounts due for such products, equipment
        or services from the compensation due the CONTRACTOR.
19       CONTRACTOR and COMPANY agree such amounts will include the
        cost of such products, equipment or services to COMPANY and may
20       include amounts to cover COMPANY'S direct and indirect
        administrative costs of securing, offering and maintaining such
21       products, equipment or services, plus an additional amount to
        provide a return to COMPANY in exchange for undertaking the risk
22       of securing, offering and maintaining such products, equipment or
        services.  Upon request by CONTRACTOR, COMPANY will afford
23       copies of documents that are necessary to determine the validity of
        items charged to CONTRACTOR.  COMPANY may retain all or any
24       portion of any vendor or supplier rebates or discounts on any items
25       purchased through COMPANY. (Emphasis in original).

26

(2) That defendant Swift Transportation Co., Inc. (AZ) violated 49 C.F.R. § 376.12(k)(2) by failing to disclose in the performance bond requirement in its contractor agreements with plaintiffs Marc Mayfield, Frank Belcher, David Hayes, Valerie Helton, and Gerald Webb prior to January 1, 2003, the specific items to which deductions from the bond could be applied.

IT IS FURTHER ORDERED that the Motion for Partial Summary Judgment of Defendant Swift Transportation Co., Inc. (AZ) on Counts I & II of the First Amended Complaint (doc. #333) is granted in part and denied in part.  It is granted to the extent that the following claims in Count I and/or Count II of the First Amended Complaint against defendant Swift Transportation Co., Inc. (AZ) are dismissed with prejudice:

(1) That defendant Swift Transportation Co., Inc. (AZ) violated 49 C.F.R. § 376.12(h) with regard to the contractor agreements entered into with plaintiffs Frank Belcher and David Hayes on or after January 1, 2003;

(2) That defendant Swift Transportation Co., Inc. (AZ), violated 49 C.F.R. § 376.12(i) with regard to its dealings with plaintiffs Marc Mayfield, Frank Belcher, David Hayes, Valerie Helton, and Gerald Webb;

(3) That defendant Swift Transportation Co., Inc. (AZ) violated 49 C.F.R. § 376.12(k)(2) by making improper deductions from the escrow accounts of plaintiffs Marc Mayfield, Frank Belcher, David Hayes, Valerie Helton, and Gerald Webb, and violated 49 C.F.R. § 376.12(k)(6) by failing to timely return unused escrow accounts to those plaintiffs upon the termination of their contractor agreements;

(4) That plaintiffs Marc Mayfield, Frank Belcher, David Hayes, Valerie Helton, and Gerald Webb are entitled monetary damages for any violations of the Truth-in-Leasing regulations by defendant Swift Transportation Co., Inc. (AZ);

(5) That any named plaintiff is entitled to injunctive relief stemming from any violation of the Truth-in-Leasing regulations by defendant Swift Transportation Co., Inc. (AZ).

IT IS FURTHER ORDERED that the Swift Defendants' Motion for Summary Judgment on Counts III and IV (doc. #335) is granted to the extent that any and all claims set forth in Counts III and IV of the First Amended Complaint against defendant Swift Transportation Co., Inc. (AZ) and all claims in the First Amended Complaint against defendant Swift Transportation Co., Inc. (NV) not otherwise terminated with prejudice by the Stipulation of Dismissal of Counts II and IV of the First Amended Complaint (doc. #363) are dismissed with prejudice.[25]

IT IS FURTHER ORDERED that the Plaintiffs' Motion for Clarification of July 26, 2006 Order (docs. #325 and #326) is granted solely to the extent that the Court's order (doc. #319), entered on July 27, 2006, is vacated.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Withdraw as Attorney of Record for Plaintiff Gerald Webb Pursuant to LRCiv 83.3 (doc. #351) is granted pursuant to LRCiv 83.3 and LRCiv 7.2(i) and that Paul D. Cullen, Sr., Joyce E. Mayers , and Daniel E. Cohen of the Cullen Law Firm, PLLC and Randall D. Wilkins and Brian Campbell of Bonn & Wilkins, Chartered are withdrawn as

---

[25]
        The stipulation to dismiss Counts III and IV was entered into only between the Swift defendants and plaintiffs Mayfield, Belcher, Hayes, and Helton. To the extent that it is not clear from the stipulation that the stipulation was meant to completely resolve the Swift defendants' summary judgment motion on Counts III and IV, the Court is granting that motion in its entirety on its merits for the reasons stated therein and pursuant to LRCiv 7.2(i) because no plaintiff filed a response to the motion that complies with LRCiv 56.1.

1  counsel for plaintiff Gerald Webb.[26]

2      IT IS FURTHER ORDERED that the parties, after the consultation of their

3  counsel, shall file a joint report no later than **November 2, 2007** that sets forth the

4  parties' positions as to what, if any, claims of the First Amended Complaint

5  remain to be resolved in this action, as well as a proposed schedule for resolving

6  any such claims.

7      DATED this 27th day of September, 2007.

8

9

10

11                          Paul G. Rosenblatt
                             United States District Judge
12

13

14

15

16

17

18

19

20

21

22

23

24  _____

25  [26]
        The Clerk of the Court shall send a copy of this Opinion and Order to
26  Gerald Webb at his last known address of record as noted in doc. #351.

-28-