**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Owner-Operator Independent Drivers )
Association, Inc., et al., )
                                 )    No. CV-02-1059-PHX-PGR
        Plaintiffs, )
vs. )
                                 )    <u>ORDER</u>
Swift Transportation Co., Inc. (AZ), )
et al., )
        Defendants. )

     Pending before the Court is Plaintiffs' Motion for Reconsideration of September 27, 2007 Opinion and Order (doc. #370), filed September 19, 2008 (doc. #378). Having considered the parties' memoranda, the Court finds that the motion should be denied.

     In its opinion and order at issue, 2007 WL 2808997 (D.Ariz. September 27, 2007), the Court granted in part and denied in part the parties' cross-motions for summary judgment that addressed parts of Counts I and II of the First Amended Class Action Complaint. The Court concluded in part therein that the plaintiffs were not entitled to any monetary damages from defendant Swift Transportation Co., Inc. (AZ) ("Swift") for its past violations of the federal Truth-in-Leasing regulations because they had not established any actual injury arising from those

violations, and that the remaining named plaintiffs were not entitled to any injunctive relief because none of them were still owner-operators for Swift and that plaintiff Owner-Operator Independent Drivers Association ("OOIDA") was not entitled to any injunctive relief because Swift's current lease form for its owner-operators was in compliance with the Truth-in-Leasing regulations.

The plaintiffs' motion, filed one year after the summary judgment order was entered, requests that the Court reconsider portions of the summary judgment order dealing with Swift's compliance with the "charge-back" regulation of the Truth-in-Leasing regulations, 49 C.F.R. § 376.12(h), and the need for injunctive relief to force Swift to comply with that regulation.[1] Although the plaintiffs do not cite to any procedural rule permitting the requested reconsideration, LRCiv 7.2(g) authorizes such a motion. As the Ninth Circuit has stated, a "a motion for reconsideration should not be granted, absent highly unusual circumstances, unless ... there is an intervening change in the controlling law." Carroll v. Nakatani, 342 F.3d 934, 945 (9th Cir.2003); *see also*, Motorola, Inc. v. J.B. Rodgers Mechanical Contractors, 215 F.R.D. 581, 586 (D.Ariz.2003) (Reconsideration is appropriate if there has been a change in the law that was decided after the court's decision); LRCiv 7.2(g) ("The Court will ordinarily deny a motion for reconsideration of an Order absent a showing of ... new ... legal authority that could not have been brought to its attention earlier with reasonable

---

[1] More specifically, the plaintiffs take issue with the Court's conclusions related to § 376.12(h) that Swift was not required to disclose the actual amount of the mark-ups it added to the named plaintiffs' charge-backs, that Swift's weekly settlement sheets were sufficient to permit the named plaintiffs to determine that Swift was validly charging them the amounts that were disclosed in their leases, and that Swift was not required to provide the named plaintiffs with its confidential business agreements underlying its mark-ups.

- 2 -

diligence.")

The sole basis for the plaintiffs' motion for reconsideration is an opinion entered by the Eleventh Circuit on September 3, 2008, Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar System, Inc., 541 F.3d 1278 (11th Cir.2008), wherein the Eleventh Circuit reversed in part the decision in Owner-Operator Independent Drivers Ass'n, Inc. v. Landstar Inway, Inc., 2007 WL 958284 (M.D.Fla. March 29, 2007), which was a decision the Court cited to a few times in its summary judgment order. Given that the Eleventh Circuit ruled differently in some significant respects than this Court did regarding the extent to which § 376.12(h) mandates disclosures related to charge-backs, the plaintiffs contend that the Court should now adopt those contrary portions of the Eleventh Circuit's decision, resulting in the entry of summary judgment in the plaintiffs' favor on those § 376.12(h) issues, and that the Court should allow further proceedings in this action to determine whether injunctive relief is appropriate to ensure Swift's compliance with the Truth-in-Leasing regulations, as interpreted by the Eleventh Circuit.[2]

---

[2] While the Eleventh Circuit determined, as did this Court, that § 376.12(h) does not prohibit a motor carrier from charging an owner-operator a change-back amount that is more than the carrier's actual cost, the Eleventh Circuit made several determinations that are contrary to those reached by this Court: for example, the Eleventh Circuit concluded (1) that the motor carrier defendant violated § 376.12(h) notwithstanding that its lease listed flat-fees for certain charge-backs and that it provided settlement statements to its owner-operators that verified that it charged the flat-fees listed in the lease, (2) that § 376.12(h) was violated because the owner-operators could not determine the validity of the charge-backs inasmuch as the defendant's disclosures failed to show on the settlement statements how the charge-back amounts were calculated, and (3) that § 376.12(h) requires a motor carrier to provide copies of documents that establish how each flat-fee was computed even
(continued...)

Notwithstanding that portions of its summary judgment order conflict with the reasoning adopted by the Eleventh Circuit in the Landstar case, the Court declines to reconsider its order. First, the Eleventh Circuit's decision does not constitute any change in the law binding on this Court, and in any case the Eleventh Circuit's decision is not even a final one yet notwithstanding that it was entered a year ago - a review of the Eleventh Circuit's docket in the Landstar case establishes that no mandate has been issued to date due to the pendency of three separate motions for rehearing en banc.[3]

Second, the Court is unpersuaded by the Eleventh Circuit's conflicting reasoning regarding the types of disclosures mandated by § 376.12(h). The Court concludes that it properly determined that Swift complied with the charge-back regulation inasmuch as its post-2003 lease form disclosed what items were to be charged-back to the owner-operators, the lease form recited how the charge-backs were to be computed given that it disclosed that charge-backs were computed using mark-ups in the form of administrative fees and profit, and Swift provided its owner-operators with settlement statements that permitted them to ascertain whether they were properly being charged-back the amounts disclosed in the leases. Given the Court's ruling that the charge-back regulation permits Swift to charge-back more than its actual costs, a ruling that the plaintiffs do not

---

[2](...continued)
if those documents reveal the motor carrier's confidential pricing lists with third-party vendors. Landstar, 541 F.3d at 1292-93.

[3] Since the motion for reconsideration was solely based on the Landstar decision, the Court delayed its resolution of the motion due to the pendency of the petitions for rehearing en banc that both sides filed in Landstar. But given that the petitions have been pending unresolved for a year now, the Court is unwilling to delay any further its resolution of the motion for reconsideration.

- 4 -

challenge in their motion for reconsideration, the Court disagrees with the Eleventh Circuit's conclusion that an owner-operator must be given access to the carrier's third-party vendor pricing lists in order to determine the validity of the charge-backs - such a requirement makes sense only if the carrier is prohibited by § 376.12(h) from charging the owner-operator more than the carrier's actual cost, which it is not. The validity of the charge-back for fuel that an owner-operator purchases from Swift, for example, does not depend on the bulk discount price that Swift pays its third-part vendor or on the amount of whatever additional administrative fee Swift adds to its discounted price, *i.e.* the actual amount of Swift's mark-up, but on whether the amount of the fuel cost charged-back to the owner-operator, as noted on the settlement statement, is actually based on the same price disclosed to the owner-operator at the pump at the time he or she chose to purchase the fuel from Swift.

Also pending before the Court is the remaining issue in this action of whether the named plaintiffs are entitled under 49 U.S.C. § 14704(a)(1) to seek restitution and/or disgorgement for the violations of the Truth-in-Leasing regulations that the Court determined in its summary judgment order had been committed by Swift. The Court concludes as a matter of law that they are not so entitled.[4]

---

[4]

In a joint status report (doc. #372) filed after the Court entered its summary judgment order, the plaintiffs stated that they were not going to seek any further liability findings with respect to any remaining claims not adjudicated by the summary judgment order. They did argue, however, that the named plaintiffs were entitled to seek the equitable remedies of restitution and disgorgement notwithstanding the Court's finding that they were not entitled to any monetary damages for any violations of the Truth-in-Leasing regulations committed by Swift. Swift presented its opposing views in the status report, and
(continued...)

The basic legal issue is whether Congress, by specifying in § 14704(a)(1) that a person injured by a motor carrier's violation of the Truth-in-Leasing regulations "may bring a civil action for injunctive relief[,]" without mentioning any other type of equitable relief, has necessarily restricted the federal courts' authority to impose the full range of equitable remedies, including restitution and disgorgement. Since this is not a settled issue in the Ninth Circuit, the Court concludes that restitution and disgorgement are not permitted remedies under § 14704(a)(1) because the statute only specifies a distinct type of equitable relief, injunctive relief, whereas it could have specified a broad range of equitable relief, including restitution and disgorgement, had that been the intent of Congress.[5]

---

[4](...continued)
the parties subsequently filed supplemental memoranda on the issue. Given that the parties have had a sufficient opportunity to present their views on this legal issue and given the parties' statement in the joint status report that they "will defer to the Court as to whether further proceedings are necessary to determine whether the named plaintiffs are entitled to seek remedies of restitution and/or disgorge-ment[,]" the Court concludes that it may appropriately resolve the issue at this time. Since no party has advised the Court otherwise, the Court presumes that this issue is still pending notwithstanding the partial stipulated dismissal subsequently entered into by the parties (*see* doc. #384).

[5]
The Court is unpersuaded by the plaintiffs' argument that the Ninth Circuit has already rejected the contention that Congress limited the availability of full equitable relief in § 14704(a)(1). The plaintiff's reference to Owner-Owner Independent Drivers' Ass'n, Inc. v. Swift Transportation Co., Inc. (AZ), 367 F.3d 1108 (9th Cir.2004), is not persuasive because the issue of the availability of such equitable relief as restitution and disgorgement was in no way at issue in that case. The context in which the Ninth Circuit stated that "Congress has not clearly indicated an intent to restrict the courts' equitable discretion in enforcing these [Truth-in-Leasing] regulations[,]" *id.* at 1114, the statement upon which the plaintiffs rely, was limited to the proper standard for determining whether preliminary injunctive relief was available under the statute, *i.e.*, whether the
(continued...)

*See* Owner-Operator Independent Drivers Ass'n, Inc. v. C.R. England, Inc., 508 F.Supp.2d 972, 983-84 (D.Utah 2007) (Court, in rejecting the theory that it had the authority to exercise all inherent equitable powers, concluded that 49 U.S.C. § 14704 only expressly authorized it to order only three types of relief: injunctive relief, damages, and attorney fees.); *cf.* Owner-Operator Independent Drivers Ass'n, Inc. v. New Prime, Inc., 213 F.R.D. 537, 545-46 (W.D.Mo.2002) (Court noted that disgorgement, while an equitable remedy, does not qualify as injunctive relief), *aff'd*, 339 F.3d 1001 (8th Cir.2003), *cert. denied*, 541 U.S. 973 (2004).

In any case, even if § 14704(a)(1) permits the plaintiffs to seek restitution and/or disgorgement, they are not entitled to these remedies in this action. The primary purpose of restitution and disgorgement is prevent a defendant from being unjustly enriched by permitting a court to deprive it of its ill-gotten gains, and the Court concludes as a matter of law that the plaintiffs have made no showing sufficient to invoke these equitable remedies. The mark-ups that the plaintiffs apparently want the Court to order Swift to return were permissibly charged under the Truth-in-Leasing regulations and the record establishes that Swift actually charged-back the amounts that were disclosed to the plaintiffs.

---

[5](...continued)
traditional equitable standard applied or whether a reasonable cause standard applied. What the Ninth Circuit decided was that the language of § 14704(a)(1) did not restrict a federal court's equity jurisdiction so as to require that an injunction issue to prevent violations of the Truth-in-Leasing regulations irrespective of traditional equitable considerations. *Id.* The Court is also unpersuaded by Swift's reliance on Fulfillment Services, Inc. v. United Parcel Service, Inc., 528 F.3d 614 (9th Cir.2008), inasmuch as that decision is inapposite as it involves an interpretation of 49 U.S.C. § 14704(a)(2), not an interpretation of § 14704(a)(1).

While the Court concluded in its summary judgment order that Swift violated the Truth-in-Leasing regulations to some extent in its pre-2003 leases, those disclosure-related deficiencies do not turn Swift's associated mark-ups into "ill-gotten" gains for purposes of restitution and/or disgorgement.

The Court thus concludes that it is appropriate for judgment to be entered in this action as there are no further claims set forth in the First Amended Class Action Complaint (doc. #174) remaining to be adjudicated. Therefore,

IT IS ORDERED that Plaintiffs' Motion for Reconsideration of September 27, 2007 Opinion and Order (doc. #378) is denied.

IT IS FURTHER ORDERED that any and all remaining claims set forth in the First Amended Class Action Complaint (doc. #174) by plaintiffs Owner-Operator Independent Drivers Association, Inc., Marc Mayfield, Frank Belcher, David Hayes, David Rush, Valarie Helton, John Nunn, Sr., Roy Sparks, Olin Sparks, Paul Hawkins, and Frank Carter are dismissed with prejudice as to defendant Swift Transportation Co., Inc. (AZ).

IT IS FURTHER ORDERED that any and all remaining claims set forth in the First Amended Class Action Complaint (doc. #174) by plaintiffs Wayne Bibicoff and Gerald Webb are dismissed as to all defendants with prejudice for lack of prosecution pursuant to Fed.R.Civ.P. 41(b).

IT IS FURTHER ORDERED that the parties shall file a joint proposed form of judgment no later than **October 9, 2009**.[6]

---

[6]

While the Court expects the parties' counsel to make every reasonable effort to provide the Court with a proposed form of judgment agreeable to both sides, if they cannot do so after sincere personal consultation, the parties may provide separate proposed forms of judgment together with a joint memorandum
(continued...)

DATED this 14th day of September, 2009.

Paul G. Rosenblatt
United States District Judge

---

⁶(...continued)
setting forth the parties' efforts to reach an agreement and the parties' arguments, briefly stated, supporting their respective positions.